UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CARRISA W.,                                             19-CV-01217-MJR

                Plaintiff,                          DECISION AND ORDER

    -v-

ANDREW SAUL,
Commissioner of Social Security,

                Defendant.
_____

       Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 11)

       Plaintiff Carrisa W.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 6) is denied, defendant's motion (Dkt. No. 9) is granted, and the case is dismissed.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

On December 22, 2015, Plaintiff protectively applied for SSI. (Administrative Transcript ["Tr."] 131). Plaintiff's application was denied initially and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 71, 88). On April 9, 2018, a video hearing was held before ALJ Bonnie Hannan, with the ALJ presiding from Alexandria, Virginia and Plaintiff appearing *pro se* from West Seneca, New York. (Tr. 32-61). On July 30, 2018, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision. (Tr. 17-27). On August 28, 2018, Plaintiff obtained an attorney representative. (Tr. 13). On July 12, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). This action followed.

## DISCUSSION

### I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment

or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.*

- 4 -

§§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is

not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

　　III.　*The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 22, 2015, the application date. (Tr. 19). At step two, the ALJ found that Plaintiff had severe impairments of agoraphobia, anxiety, migraines, and vertigo. (Tr. 19). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20).

Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in the regulations in that Plaintiff could: lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk for 6 hours in an 8-hour workday; occasionally balance, stoop, and climb ramps or stairs; never climb ladders, ropes, or scaffolds; never work around unprotected heights or moving mechanical parts; tolerate no more than moderate noise levels; perform simple, routine, and repetitive tasks, but not at a production rate pace, such as assembly-line work; make simple work-related decisions; tolerate few changes in a routine work setting (defined as performing the same duties at the same station or location on a day-to-day basis);

- 6 -

occasionally interact with supervisors or coworkers, but not perform tandem tasks or team-type activities; and never interact with the public. (Tr. 22).

At step four of the sequential evaluation, the ALJ concluded that Plaintiff had no past relevant work. (Tr. 26). At step five, the ALJ found that Plaintiff could perform light exertional work existing in significant numbers in the national economy, including work as a cleaner, office clerk, and marking clerk. (Tr. 27). Accordingly, the ALJ determined that Plaintiff had not been under a disability since December 22, 2015, the date her application was filed. (Tr. 27).

IV.   *Plaintiff's Challenge*

Plaintiff argues that the ALJ erred in her duty to develop the record resulting in a disability determination not supported by substantial evidence. The Court finds this argument without merit.

First, Plaintiff argues that the ALJ failed to develop the record by obtaining mental health records from Mid-Erie Counseling and Treatment Services. However, as Plaintiff acknowledged, the record contained a discharge summary from Mid-Erie. (Tr. 476-79). The Social Security Administration ("SSA") initially requested records from Mid-Erie in February 2016. (Tr. 75). Mid-Erie did not provide records at that time. (Tr. 77, 263). After further attempts, SSA received a discharge summary in March 2018. (Tr. 476-79). At the ALJ hearing in April 2018, Plaintiff specifically testified that no additional records were outstanding. (Tr. 37). Thus, even though Plaintiff was not represented, the ALJ satisfied her duty to develop the record. *See, e.g., Myers ex rel. C.N. v. Astrue*, 993 F.Supp.2d 156, 163 (N.D.N.Y. 2012) ("Although the ALJ has an affirmative duty to develop the administrative record, the ALJ's obligation is not unlimited. Plaintiff cannot

- 7 -

simply identify arguable gaps in the administrative record and claim that such gaps are a per se basis for remand.").

Moreover, the discharge summary provided sufficient information regarding Plaintiff's course of treatment at Mid-Erie. (Tr. 476-79). *See Blackman v. Berryhill*, No. 1:16-CV-00869, 2018 WL 3372963, at *4 (W.D.N.Y. July 11, 2018) (ALJ did not fail in his duty to develop the record where treatment summaries provided a comprehensive overview of plaintiff's mental health progress over the course of his treatment.

Here, the discharge summary indicated that Plaintiff received counseling services since 2012. (Tr. 476). Although her counselor tried many different treatment modalities, including systematic desensitization, mindfulness, cognitive behavior therapy, and dialectical behavioral therapy, Plaintiff would not attempt to change. (Tr. 477). She continued to live in the downstairs of her parents' house and spent her days playing with her cats and playing video games on her computer. (Tr. 477). She was discharged from counseling because she would not take an active role in her goals and objectives, and she refused family counseling because she was not talking to her stepfather. (Tr. 477). This evidence was generally consistent with Plaintiff's testimony and other medical evidence, including primary care treatment records and the psychological evaluation with consultative examiner Dr. Christine Ransom, Ph.D. (Tr. 32-41, 259-61, 272-99). Thus, the record before the ALJ contained sufficient information regarding Plaintiff's mental health impairment and further development was not necessary. *See Walker v. Astrue*, No. 11-CV-766S, 2012 WL 4473249, at *3 (W.D.N.Y. Sept. 26, 2012) ("an ALJ does not have an affirmative duty to expand the record ad infinitum. Instead, he or she must only develop it when there are gaps in the record, or when the record serves as an inadequate

basis on which to render a decision.") (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).

Furthermore, Plaintiff does not explain what evidence from Mid-Erie Counseling could be expected to alter the ALJ's decision.  Plaintiff obtained her current attorney representative one month after the ALJ's decision, but neither Plaintiff nor her attorney presented additional records from Mid-Erie Counseling to the Appeals Council or the Court.  The Act provides a mechanism for a claimant to obtain a remand for the consideration of new and material evidence that was not considered by the ALJ, known as a sentence six remand.  42 U.S.C. § 405(g); *Butts v. Barnhart*, 388 F.3d 377, 384 n.4 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005).  Though Plaintiff argues that the ALJ failed to obtain all relevant medical records, she provided no such evidence, either to the Appeals Council or to the Court, that would support her claim that the ALJ erred in finding that she was not disabled.  Plaintiff has therefore failed to establish that remand is required in order to request additional evidence from her mental health providers. *Cf. Bushey v. Colvin*, 607 F. App'x 114, 115 ("[The plaintiff] has not pointed to any evidence subsequent to [the application date] that was not included in the record but could have influenced the Commissioner's decision."); *Morris v. Berryhill*, 721 F. App'x 25, 27-28 (2d Cir. 2018) (summary order) (explaining that the mere "theoretical possibility" of missing records that might be probative of disability "does not establish that the ALJ failed to develop a complete record").

Plaintiff further claims that the ALJ's RFC finding was not supported by any medical opinion evidence.  Plaintiff argues that the ALJ needed a medical opinion of her functional limitations in order to assess her RFC.  However, this is not the standard required. *See*

- 9 -

*Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (rejecting the argument that an ALJ cannot determine the RFC without the "support of at least some medical opinion concerning [the RFC's] limitations"). Pursuant to the regulations, the ALJ – not a physician – is responsible for deciding a claimant's RFC, and, in making that determination, the ALJ must consider all relevant medical and other evidence. 20 C.F.R. §§ 416.927(c), 416.945(a), 416.946(c). The ALJ is ultimately tasked with reaching an RFC assessment based on the record as a whole. 20 C.F.R. § 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as…your residual functional capacity…the final responsibility for deciding these issues is reserved to the Commissioner."); *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). In this case, the ALJ assessed an RFC that is supported by substantial evidence in the record.

Contrary to Plaintiff's contention, the record was not devoid of any opinions from treating or examining medical sources regarding her functional limitations. While the record contained no treating source opinions, the ALJ properly obtained appropriate examining source opinions from Dr. Ransom and Dr. Donna Miller, D.O. (Tr. 255-61). As discussed below, these opinions were consistent with the record as a whole and substantial evidence supporting the ALJ's decision. Thus, the ALJ had no duty to obtain further examining source opinions or contact a treating source for an opinion. See *Pellam*, 508 F. App'x at 90 (ALJ did not have a duty to request a medical source statement from

a treating source where the record contained a consultative examination and treatment notations).

With respect to Plaintiff's mental functioning, the ALJ gave great weight to the opinion of Dr. Ransom, the consultative psychological examiner. (Tr. 25, 261). Following a thorough mental status examination, Dr. Ransom opined that Plaintiff would have no difficulty following, understanding, and carrying out simple instructions; performing simple tasks independently; maintaining concentration and attention for simple tasks; maintaining a simple, regular schedule; and learning simple tasks. (Tr. 25, 261). Dr. Ransom stated that Plaintiff might have mild difficulty performing complex tasks, relating adequately with others, and appropriately deal with stress due to mild panic disorder with agoraphobia. (Tr. 261). The ALJ found Dr. Ransom's opinion consistent with the results of her examination, as well as Plaintiff's demonstrated ability to perform household chores, concentrate on reading and computer games, and participate effectively and appropriately in her healthcare appointments. (Tr. 25, 47-49, 256, 259, 261). Consistent with Dr. Ransom's opinion regarding difficulty with complex tasks, the ALJ restricted Plaintiff to simple, routine, and repetitive tasks not performed at a production rate (assembly-line) pace. (Tr. 22). In line with Dr. Ransom's opinion regarding difficulty relating adequately with others, the ALJ restricted Plaintiff to no interaction with the public, only occasional interaction with supervisors or coworkers, and no tandem tasks or team type activities. (Tr. 22). Finally, considering Dr. Ransom's opinion regarding Plaintiff's ability to deal with stress, the ALJ restricted Plaintiff to work involving simple, work-related decisions and a routine work setting involving few changes, meaning that Plaintiff would

- 11 -

perform the same duties at the same station or location on a day-to-day basis. (Tr. 22). Because the ALJ's mental RFC assessment was consistent with Dr. Ransom's opinion, substantial evidence supports the ALJ's findings.

With respect to Plaintiff's physical functioning, the ALJ gave great weight to the opinion of consultative examiner, Dr. Miller. (Tr. 25, 255-57). Following an examination, Dr. Miller opined that Plaintiff should avoid unprotected heights and stairs due to neurocardiogenic syncope. (Tr. 25, 257). The ALJ found Dr. Miller's opinion consistent with the results of her examination, as well as the frequent reports of continued dizziness noted in the treatment record. (Tr. 25). The ALJ accounted for Dr. Miller's opinion by restricting Plaintiff light work with no climbing ladders, ropes, or scaffolds and occasional climbing of ramps or stairs. (Tr. 22).

Plaintiff claims that the ALJ's RFC did not sufficiently accounted for Dr. Miller's restriction with stairs. However, contrary to Plaintiff's assertion, Dr. Miller did not preclude Plaintiff from using stairs. Rather, she merely suggested that Plaintiff should avoid stairs due to her dizzy spells. (Tr. 257). As the ALJ noted, Plaintiff testified that activities such as climbing stairs triggered her symptoms of lightheadedness, but Plaintiff also continued to climbs stairs in her home every day by "go[ing] really, really slow." (Tr. 23, 45). Thus, the ALJ's conclusion that Plaintiff could climb stairs occasionally is supported by substantial evidence in the record. (Tr. 25). *Cf. Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112-13 (2d Cir. Mar. 25, 2010) (no error in crediting claimant's testimony about ability to lift 35 pounds).

Plaintiff also argues that the ALJ failed to obtain a medical opinion regarding her physical functioning and should have sent her for an internal medicine consultative

examination, in addition to the neurological examination with Dr. Miller.  The Court finds this argument unavailing.   The ALJ properly obtained a consultative neurological evaluation due to Plaintiff's complaints of a neurological disorder.  Plaintiff specifically testified at the hearing that there was nothing wrong with her physically other than dizzy spells.  (Tr. 45).  Moreover, as a general family practice doctor, Dr. Miller did perform a thorough physical examination – which showed a normal gait and station; intact hand dexterity; full (5/5) strength in the hands, arms, and legs; no neurological deficits; normal finger-to-nose testing; normal rapid alternating movements; no muscle atrophy; and normal sensation to touch.  (Tr. 256-57).

Presumably, Dr. Miller did not address Plaintiff's functional ability to sit, stand, walk, lift, carry, balance, squat, and stoop because she found no limitations in any of these areas.  (Tr. 257).  Again, Plaintiff admitted that she did not have any problems with physical functioning other than dizzy spells, which improved with medication and regular sleep patterns.  (Tr. 45, 193, 240, 266, 359, 389).  The burden is not on the ALJ to prove Plaintiff's functional limitations.  The burden is on the Plaintiff to prove her RFC.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Here, Smith had a duty to prove a more restrictive RFC, and failed to do so.").

Overall, the record contained sufficient medical opinion evidence, which the ALJ properly considered along with the treatment records and Plaintiff's statements and demonstrated activities in assessing Plaintiff's RFC.  (Tr. 24-25).  Contrary to Plaintiff's argument, the fact that the ALJ did not adopt any one opinion does not indicate that the ALJ improperly relied on her own lay opinion.  *See Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (rejecting this argument, finding that "because the record contained

sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his residual functional capacity finding, there was no 'gap' in the record and the ALJ did not rely on his own 'lay opinion.'").

## **CONCLUSION**

For the following reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 6) is denied, defendant's motion for judgment on the pleadings (Dkt. No. 9) is granted, and the case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      January 22, 2021
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge